1  Philip R. Goldberg, Esquire
2  Email: PGoldberg@SeraphLegal.com
3  *Attorney for Plaintiff, Frank Capobianco*
4  Seraph Legal, P.A.
5  California Bar No.: 298855
6  11045 Camarillo St., Suite 116
7  North Hollywood, CA 91602
8  Telephone: (773) 388-2784
9  Facsimile: (877) 205-4380
10
11
12                **UNITED STATES DISTRICT COURT**
13                **CENTRAL DISTRICT OF CALIFORNIA**
14

Frank Capobianco,

    *Plaintiff*,                          Case No.:        _____

    v.                                            Ad Damnum:   $154,000 + Fees & Costs

Westlake Services, LLC,

    *Defendant*.                          **COMPLAINT AND JURY DEMAND**

15
16                **<u>Complaint for Violations of</u>**

17      **<u>THE TCPA, FCRA, California Rosenthal Act, and Invasion of Privacy</u>**

18      1.      Westlake Services, LLC, d/b/a Westlake Financial Services, LLC

19  ("**Westlake**"), attempted to collect a debt which it knew to be the result of fraudulent

20  activity from Mr. Frank Capobianco ("**Mr. Capobianco**").

2.   In its efforts to wrest payment from Mr. Capobianco, Westlake:

(a)   *robocalled* the Plaintiff approimately 100 times, without consent - Each call violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("**TCPA**"), California's Rosenthal Act, Cal. Civil Code §§ 1788 *et seq.* ("**Rosenthal Act**") and constituted an actionable Invasion of Privacy ("**IOP**"); and,

(b)   Falsely reported the tradeline to national credit reporting agencies, not merely as owed, but as delinquent, while failing to investigate Plaintiff's valid disputes, thereby violating Mr. Capobianco's rights under the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* ("**FCRA**").

3.   Unwanted "Robocalls" are the most common consumer complaint in America today.  Americans were bombarded with three billion robocalls last month.  That is 95.4 million per day, and four million per hour.[1]

4.   "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling

---

[1] YouMailRobocall Index, available at http://Robocallindex.com

1    the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d

2    1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago,

3    robocall abuse continues to skyrocket.

4         5.    Robocalls are very inexpensive to make.  As noted in a Senate hearing

5    on the subject: "With such a cheap and scalable business model, bad actors can blast

6    literally tens of millions of illegal robocalls over the course of a single day at less

7    than 1 cent per minute."  *Stopping Fraudulent Robocall Scams: Can More Be*

8    *Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of*

9    *the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement

10   of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of

11   Consumer Protection, Federal Trade Commission).

12        6.    The TCPA was enacted to prevent companies like Westlake from

13   invading American citizens' privacy and prevent illegal robocalls.

14        7.    Congress enacted the TCPA to prevent real harm.  Congress found that

15   "automated or pre-recorded calls are a nuisance and an invasion of privacy,

16   regardless of the type of call" and decided that "banning" such calls made without

17   consent was "the only effective means of protecting telephone consumers from this

18   nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991),

1    codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct.

2    740, 744 (2012) ("The Act bans certain practices invasive of privacy").

3        8.    According to findings by the FCC—the agency Congress vested with

4    authority to issue regulations implementing the TCPA—such calls are prohibited

5    because, as Congress found, automated or prerecorded telephone calls are a greater

6    nuisance and invasion of privacy than live solicitation calls, and such calls can be

7    costly and inconvenient.  The FCC also recognized that wireless customers are

8    charged for incoming calls whether they pay in advance or after the minutes are used.

9        9.    "This private cause of action is a straightforward provision designed to

10    achieve a straightforward result. Congress enacted the law to protect against

11    invasions of privacy that were harming people. The law empowers each person to

12    protect his own personal rights. Violations of the law are clear, as is the remedy."

13    *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

14                   **JURISDICTION AND VENUE**

15        10.    Jurisdiction and venue for the purposes of this action are appropriate

16    and conferred by 28 U.S.C. §1331.

17        11.    The violations described in this Complaint occurred while Plaintiff was

18    in Tarpon Springs, Florida.

1    12.    Defendant is a California Limited Liability Company whose registered

2    agent is **Corporate Creations Network Inc., 4640 Admiralty Way, 5ᵗʰ Floor,**

3    **Marina del Rey, CA 90292**.  Its offices are located at 4751 Wilshire Blvd, Suite

4    100, Los Angeles, CA 90010.

5    13.    Defendant's corporate office is located in Los Angeles, California

6    where it conducts regular and systematic business activities such that venue is proper

7    in California.  Thus, personal jurisdiction is established.

8    14.    Venue is proper in the United States District Court for the Central

9    District of California pursuant to 28 U.S.C. § 1391 because the conduct complained

10   of herein occurred within this judicial district and many of the acts and transactions

11   giving rise to this action occurred in this district because Defendant:

12   (a)    Is authorized to conduct business in this district and has intentionally

13          availed itself of the laws and markets within this district;

14   (b)    Does substantial business within this district;

15   (c)    Is subject to personal jurisdiction in this district because it has availed

16          itself of the laws and markets within this district; and,

17   (d)    The harm to Plaintiff occurred within this district.

18

1          **FACTUAL ALLEGATIONS**

2          15.     Plaintiff purchased a vehicle (the "**vehicle**"), using his credit and debit

3    cards, from a dealer which provided fraudulent loan documents to Defendant,

4    presumably in an effort to double its payment for the vehicle.  Shortly after the sale,

5    the dealer permanently closed.

6          16.     Thereafter, Defendant proceeded to attempt to collect the fraudulent

7    loan (the "**debt**") from Plaintiff, despite Plaintiff informing Defendant of the

8    fraudulent nature of the debt, making numerous unauthorized telephone calls to

9    Plaintiff using an *Automatic Telephone Dialing System* ("**ATDS**") and reporting the

10   debt as a delinquent tradeline to Trans Union, LLC, a nationwide *Consumer*

11   *Reporting Agency* ("**CRA**").

12         17.     Plaintiff is a natural person and citizen of the State of Florida, residing

13   in Tarpon Springs, Florida.

14         18.     Plaintiff is a *Consumer* as defined in 15 U.S.C. § 1692(a)(3).

15         19.     Plaintiff is an *Alleged Debtor*.

16         20.     Plaintiff was the *Called Party* during each phone call which is a subject

17   of this complaint because Plaintiff is the current subscriber of the numbers called

18   and pays for such subscriptions. *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d

6

1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

21.     Plaintiff is informed and believes and thereon alleges that Defendant was engaged in the business of collecting consumer debts and regularly collects consumer debts on behalf of third parties and/or itself.  Defendant is accordingly a *Debt Collector* as defined in the Rosenthal Act, Cal. Civil Code § 1788.2(c).

22.     The debt allegedly owed by the Plaintiff was incurred as a the result of the purchase fo a personal vehicle for personal use pursuant to a consumer credit transaction and is, therefore, a *Consumer Debt* under  §1788.2(f) of the Rosenthal Act.

23.     Plaintiff is the regular user and subscriber of the cellular telephone numbers at issue, (727) 271-6718 and (727) 271-8879.

24.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling calling up to six times per day, day after day, with such frequency as can reasonably be expected to harass.

25.     Defendant did not have Plaintiff's *Express Consent* to call his cell phone.

26.     Plaintiff never received a loan from Westlake for the vehicle, as the vehicle was fully paid at the time of purchase.

27.     Plaintiff did not provide his phone number to Westlake and Plaintiff did not complete a loan application for the vehicle.

28.     It is the Defendant's burden to prove they had *Express Consent* per the TCPA to call the Plaintiff on his cell phone using an ATDS.

29.     It is the Defendant's burden to prove they had *Express Consent* per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account on which they were calling.

30.     Defendant was put on notice that Plaintiff did not want the Defendant contacting him.

31.     Plaintiff informed Defendant repeatedly that Plaintiff did not have a loan and that he had paid for the vehicle in question with his credit card and debit card in full. [2]

32.     Plaintiff expressly *revoked* any consent Defendant may have mistakenly believed it had to place telephone calls to Plaintiff's aforementioned cellular telephone numbers by the use of an ATDS or a pre-recorded or artificial voice.

---

[2] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what was said to the Defendant.

1    33.    Defendant attempted to collect a debt from the Plaintiff by its campaign

2    of telephone calls.

3    34.    Defendant made at least one hundred (100) calls to (727) 271-6718

4    using an ATDS.

5    35.    Defendant made at least one hundred (100) calls to (727) 271-8879

6    using an ATDS.

7    36.    Each call the Defendant made to (727) 271-6718 in the last four years

8    was made using an ATDS.

9    37.    Each call the Defendant made to (727) 271-8879 in the last four years

10    was made using an ATDS

11    38.    Each call the Defendant made to the Plaintiff's cell phone numbers was

12    done without Plaintiff's *Express Permission*.

13    39.    Each call the Defendant made to the Plaintiff was made using an ATDS,

14    which has the capacity to store or produce telephone numbers to be called, without

15    human intervention, using a random or sequential number generator; and to dial such

16    numbers as specified by 47 U.S.C §227(a)(1).

17    40.    The calls at issue were placed by the Defendant using a "prerecorded

18    voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

1    41.    Plaintiff repeatedly asked the Defendant to stop calling his cell phone,

2    however, the Defendant continued to make calls.

3    42.    Plaintiff's conversations with the Defendant, putting them on notice

4    that he did not want to be called, were ignored.

5    43.    Defendant has recorded at least one conversation with the Plaintiff.

6    44.    Defendant has recorded numerous conversations with the Plaintiff.

7    45.    Defendant has made approximately one hundred (100) calls to

8    Plaintiff's aforementioned cellular telephone numbers in the past four years which

9    will be established precisely once Defendant turns over their dialer records.

10    46.    Despite actual knowledge of their wrongdoing, the Defendant

11    continued its campaign of abusive robocalls.

12    47.    Defendant has been sued in federal court where the allegations include

13    calling an individual using an ATDS after the individual asked for the calls to stop.

14    48.    By effectuating these unlawful phone calls, Defendant has caused

15    Plaintiff the very harm that Congress sought to prevent through the TCPA —namely,

16    a "nuisance and invasion of privacy."

17    49.    Defendant's aggravating and annoying phone calls trespassed upon and

18    interfered with Plaintiff's rights and interests in his cellular telephone and cellular

19    telephone line, by intruding upon Plaintiff's seclusion.

1    50.    Defendant's phone calls harmed Plaintiff by wasting his time while its

2    reporting of the false credit tradeline negatively affected his credit.

3    51.    Moreover, "wireless customers [like Plaintiff] are charged for incoming

4    calls whether they pay in advance or after the minutes are used."  In re: *Rules*

5    *Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone

6    calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by

7    using minutes allocated to Plaintiff by his cellular telephone service provider.

8    52.    In the last 3 years, the Defendant has had 536 complaints reported to

9    the Better Business Bureau (BBB), of which 255 were classified as being related to

10   "Billing/Collection Issues." (See bbb.org/WestlakeFinancialServices)

11   53.    Since January 2017, Defendant has had 251 complaints classified under

12   "communications tactics" filed against it with the *Consumer Financial Protection*

13   *Bureau*    ("**CFPB**")    (See    Consumerfinance.gov/data-research/consumer-

14   complaints/search).

15   54.    Westlake is notorious for preying on unsophisticated consumers and for

16   violating federal and state consumer protection laws while engaging in unfair and

17   illegal debt collection tactics.  Their widespread illegal conduct caught the attention

18   of the CFPB and Westlake was ordered to pay consumers $44 million dollars in

19   relief   for   its   widespread   unlawful   debt   collection   activities.   (See

1    http://files.consumerfinance.gov/f/201509_cfpb_consent-order-westlake-services-

2    llc.pdf).

3    55.    As part of the Order, the CFPB mandated that Westlake cease its

4    unlawful and illegal debt collection activities and overhaul its business practices.

5    Despite being ordered by the federal government to clean up its act, Westlake

6    continues to abuse customers, like Plaintiff, on a regular and systematic basis.

7    56.    Defendant regularly profits from breaking the law which acts as an

8    incentive to continue violating the TCPA and other state and federal statutes.

9    57.    Plaintiff never expressed consent to the Defendant to be called on his

10   aforementioned cellular telephone numbers by the use of an ATDS or a pre-recorded

11   or artificial voice.

12   58.    None of Defendant's telephone calls placed to Plaintiff were for

13   "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

14   59.    Defendant violated the TCPA  and The Rosenthal Act with respect to

15   the Plaintiff.

16   60.    Defendant willfully or knowingly violated the TCPA with respect to

17   the Plaintiff.

1    61.    At numerous times after discovering the fraudulent credit account being

2    serviced by Westlake and reported on his credit, Mr. Capobianco contacted the

3    Defendant to dispute the account.

4    62.    Mr. Capobianco disputed both the account and the tradeline in detailed

5    written correspondence in July and August of 2019.

6    63.    Mr. Capobianco called Westlake on June 22, 2020, and spoke with an

7    agent named Tracy Bergman.

8    64.    During this Call, Mr. Capobianco detailed his dispute of the account,

9    describing the underlying transaction and the fraud that had occurred.

10    65.    Bergman – Defendant's agent and representative – confirmed that the

11    account was the result of fraud, that Defendant's credit report tradeline would be

12    removed, and that the car, which was still very much in Plaintiff's possession, would

13    have been reposssed were the account accurate.

14    66.    Despite this, Westlake continued to report the fraudulent tradeline as

15    owed and without any indicia of Mr. Capobianco's dispute.

16    67.    In detailed written correspondences sent in July and August of 2019,

17    Mr. Capobianco once again disputed Defendant's collection tradeline.

18    68.    Westlake conducted no investigation, let alone a reasonable one, into

19    Mr. Capobianco's disputes.

1    69.    Had Westlake conducted any investigation, it would have discovered

2    that it continued to report the collection tradeline which it knew to be false.

3    70.    As of May 28, 2020, Westlake continued to actively report the tradeline

4    as undisputed and owed by Mr. Capobianco. **SEE PLAINTIFF'S EXHIBIT A**

5    71.    During this time period, over fifty (50) inquiries have been made into

6    Mr. Capobianco's Trans Union credit file.

7    72.    Upon information and belief, all of these inquirers have been falsely

8    informed that Mr. Capobianco has an active, undisputed, delinquent auto loan with

9    Westlake.

10    73.    Had Westlake conducted reasonable investigations into Mr.

11    Capobianco's disputes, the tradeline would have been removed, and Mr.

12    Capobianco's credibility would not have been damaged.

13    74.    Mr. Capobianco has hired the aforementioned law firm to represent him

14    in this matter and has assigned his right to fees and costs to the firm

15

<u>**COUNT I**</u>
**(Violation of the TCPA)**

75.     Plaintiff incorporates Paragraphs 1 through 74 as if fully restated herein.

76.     Westlake willfully violated the TCPA with respect to Mr. Capobianco each time they called him after he revoked his consent to be called using an ATDS or pre-recorded voice.

77.     Westlake knowingly violated the TCPA with respect to Mr. Capobianco each time it placed auto-dialed calls to his cellular telephone after he revoked his consent to be called by Westlake using an ATDS or pre-recorded voice.

78.     Westlake repeatedly placed non-emergency telephone calls to Mr. Capobianco's wireless telephone numbers using an ATDS or prerecorded or artificial voice without Mr. Capobianco's prior express consent in violation of federal law, including 47 U.S.C §227(b)(1)(A)(iii).

79.     As a result of Westlake's illegal conduct, Mr. Capobianco suffered actual damages and, under § 227(b)(3)(B), is entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

80.     Mr. Capobianco is also entitled to, and does, seek injunctive relief prohibiting Westlake from violating the TCPA in the future.

1    **WHEREFORE**, Mr. Capobianco respectfully demands a trial by jury on all

2    issues so triable and judgment against Westlake for statutory damages of $1,500 per

3    call (totaling **$150,000**), punitive damages, actual damages and any other relief the

4    court may deem just and proper.

5

6                                                **COUNT II**

7                              **(Violation of the Rosenthal Act)**

8    81.    Plaintiff incorporates Paragraphs 1 through 74 as if fully restated

9    herein.

10   82.    Westlake violated the **Rosenthal Act**, including but not limited to the

11   following sections when Westlake and its employees and/or agents, in their efforts

12   to collect a Consumer Debt:

13   (a)    § 1788.11 – caused Mr. Capobianco's telephone to ring and/or

14          communicated with him by telephone so unreasonably often as to

15          constitute harassment; and,

16   (b)    § 1788.17 – violated provisions of Title 15 of United States Code

17          section 1692d by causing the telephone to ring or engaging Mr.

18          Capobianco in telephone conversation repeatedly or continuously with

19          the intent to annoy, abuse, or harass persons at the called number.

1    83.    As a direct and proximate result of Westlake's violations, Mr.

2    Capobianco suffered actual damages, including, but not limited to emotional

3    distress, in an amount to be established by proof at trial, and Mr. Capobianco is

4    entitled to an award of actual damages, costs, and attorney's fees pursuant to Cal.

5    Civ. Code §1788.30.  In addition, Westlake willfully and knowingly violated the

6    Rosenthal Act which entitles Mr. Capobianco to a penalty of not less than $100 and

7    not more than $1,000.00 pursuant to Cal. Civ. Code §1788.30(b).

8         **WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues

9    so triable and judgment against Defendant for statutory damages of $1,000, punitive

10   damages, actual damages, attorneys' fees, costs, and any other such relief the court

11   may deem just and proper.

12
13                         **<u>COUNT III</u>**
14                    **(Violations of the FCRA)**
15
16   84.    Plaintiff incorporates Paragraphs 1 through 74 as if fully restated

17   herein.

18   85.    Westlake violated **15 U.S.C. § 1681s-2(b)** when it failed to make a

19   reasonable investigation after receiving notice of dispute from the consumer since

20   any reasonable investigation would have concluded that Westlake's report was

17

1    grossly inaccurate unless removed, or at a minimum, marked as disputed by the

2    consumer.

3          86.    Westlake's conduct was willful and intentional, or, alternately, was

4    engaged in with a reckless disregard for consumer rights, as shown by its admission

5    during the June 22, 2019 phone call that the account was fraudulent, and failure to

6    properly investigate in two subsequent written disputes.

7          87.    Westlake is liable under the FCRA to Mr. Capobianco in a statutory

8    amount up to $1,000 *per incident*.

9          **WHEREFORE,** Mr. Capobianco respectfully requests this honorable Court

10    to enter judgment in his favor, and against Westlake, for:

11         a.    The greater of Mr. Capobianco's actual damages or statutory damages

12               of $1,000.00 per incident (**$3,000.00** total) pursuant to 15 U.S.C. §

13               1681n(a)(1)(B) or 15 U.S.C. § 1681o(a)(1);

14         b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §

15               1681n(a)(3) or 15 U.S.C. § 1681o(a)(2); and,

16         c.    Such other relief that this Court deems just and proper.

17

18

## COUNT IV
### (Invasion of Privacy – Intrusion Upon Seclusion)

88.     Plaintiff incorporates Paragraphs 1 through 74 as if fully restated herein.

89.     Through its conduct in attempting to collect a debt which it admits is invalid, Westlake repeatedly and intentionally invaded Mr. Capobianco's privacy.

90.     All of the calls made to Mr. Capobianco's cell phone by Westlake and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Mr. Capobianco's right to privacy.

91.     Westlake's persistent autodialed calls to Mr. Capobianco's cellular phone prevented Mr. Capobianco from exercising his right to be left alone, causing him anguish and mental distress.

92.     Westlake's autodialed collection calls disrupted Mr. Capobianco's privacy, disrupted his sleep, disrupted his mealtimes, disrupted his work, and continually frustrated and annoyed Mr. Capobianco.

93.     These persistent autodialed collection calls eliminated the peace and solitude that the Mr. Capobianco would have otherwise had in his home and anywhere else he went with his cellular phone.

94. By calling both cellular phone numbers, Westlake blocked Mr. Capobianco from having any hope of escape from their incessant collection calls both in his home and outside.

95. By persistently autodialing Mr. Capobianco's cellular phone without prior express consent, Westlake invaded Mr. Capobianco's right to privacy, as legally protected by the TCPA, and caused Mr. Capobianco to suffer concrete and particularized harm.

96. Westlake's harassing collection conduct and tactic of repeatedly auto dialing Mr. Capobianco on his cellular and home telephone after requests to stop is highly offensive to a reasonable person.

97. Westlake intentionally intruded upon Mr. Capobianco's solitude and seclusion for the purpose of profiting on a debt which Westlake admitted was not owed.

98. As a result of Westlake's action or inaction, Mr. Capobianco has been damaged.

**WHEREFORE**, Mr. Capobianco respectfully demands a trial by jury on all issues so triable and judgment against Westlake for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

1

Respectfully submitted,

/s/ *Philip R. Goldberg*
Philip R. Goldberg, Esquire
Seraph Legal, P.A.
Philip R. Goldberg
CA Bar No.: 298855
11045 Camarillo Street, #116
Telephone: (773) 388-2784
Facsimile: (877) 205-4380
Email: PGoldberg@SeraphLegal.com

*Attorney for Plaintiff, Frank Capobianco*

## **ATTACHED EXHIBITS**

**EXHIBIT A**          Redacted Excerpt Plaintiff's Trans Union Consumer Disclosure
                       Dated May 28, 2020